UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHARON GREEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:15 CV 827 ACL |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff Sharon Green brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Green's severe bilateral shoulder joint pain, she was not disabled as she had the residual functional capacity ("RFC") to perform past work as a retail sales clerk, and other jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

### I. Procedural History

Green protectively filed her applications for DIB and SSI on April 12, 2012, alleging that she became unable to work due to her disabling condition on April 9, 2012. (Tr. 142-48, 135-41.)

Her claims were denied initially. (Tr. 71, 72.) Following an administrative hearing, Green's claims were denied in a written opinion by an ALJ, dated January 23, 2014. (Tr. 13-26.) Green then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on April 20, 2015. (Tr. 7, 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Green first claims that the "[s]ubstantial evidence does not support the ALJ's finding that Plaintiff can frequently reach overhead." (Doc. 12 at 10.) Green next argues that the ALJ erred "in finding Plaintiff could return to past relevant work at a job that was not performed at substantial gainful activity." *Id.* at 14. Green finally argues that the ALJ "failed to identify or resolve the overhead reaching conflicts between the VE testimony and the DOT/SCO description of the identified jobs." *Id.* at 15.

## II. The ALJ's Determination

The ALJ stated that Green met the insured status requirements of the Social Security Act through December 31, 2016. (Tr. 15.) The ALJ found that Green had not engaged in substantial gainful activity since April 9, 2012. *Id.*

In addition, the ALJ concluded that Green had the following severe impairment: post-surgery bilateral shoulder joint pain. *Id.* The ALJ found that Green did not have an impairment or combination of impairments that meets or equals in severity the requirements of any listed impairment. (Tr. 16.)

As to Green's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform light work

> as defined in 20 CFR 404.1567(b) and 416.967(b) in that the claimant can stand/walk six hours out of an eight-hour workday; can sit six hours out of an eight hour workday; can occasionally lift 20 pounds, 10 pounds frequently; must avoid climbing ropes, ladders, and scaffolds; can frequently push and pull with the bilateral upper extremities; and can frequently reach overhead.

(Tr. 17.)

In support of this determination, the ALJ stated that the record did not contain any opinions from treating or examining physicians indicating that Green was disabled or that she had greater limitations. (Tr. 23.) The ALJ also performed a credibility analysis and found that Green's allegations regarding her limitations were not entirely credible. (Tr. 21.)

The ALJ further found that Green was capable of performing past relevant work as a retail sales clerk. *Id.* The ALJ found in the alternative that there were other jobs that exist in significant numbers in the national economy that Green can also perform, such as mail sorter, marker, and cashier. (Tr. 24-25.) The ALJ therefore concluded that Green has not been under a disability, as defined in the Social Security Act, from April 9, 2012, through the date of the decision. (Tr. 26.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on April 12, 2012, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on April 12, 2012, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the

claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted).   *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security

Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless

of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV. Discussion

Green first argues that substantial evidence does not support the ALJ's finding that Green can frequently reach overhead. Green also contends that the ALJ made several errors in assessing her credibility, which affected the ALJ's RFC determination.

Residual functional capacity is defined as that which a person remains able to do despite her limitations. 20 C.F.R. § 404.1545(a), *Lauer v. Apfel,* 245 F.3d 700, 703 (8th Cir. 2001). The ALJ must assess a claimant's RFC based upon all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. 20 C.F.R. § 404.1545(a); *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995); *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005). A claimant's RFC is a medical question, and there must be some medical evidence, along with other relevant, credible evidence in the record, to support the ALJ's RFC determination. *Id.; Hutsell v. Massanari,* 259 F.3d 707, 711–12 (8th Cir. 2001); *Lauer,* 245 F.3d at 703–04; *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. *Hutsell,* 259 F.3d at 712. However, although an ALJ must determine the claimant's RFC based upon all relevant evidence,

the ALJ is not required to produce evidence and affirmatively prove that a claimant is able to perform certain functions. *Pearsall,* 274 F.3d at 1217 (8th Cir. 2001); *McKinney,* 228 F.3d at 863. The claimant bears the burden of establishing her RFC. *Goff,* 421 F.3d at 790.

In determining Green's RFC, the ALJ first stated that the medical records do not support Green's allegations. (Tr. 18.) The ALJ then provided a detailed summary of the objective medical evidence. (Tr. 18-21.) The medical evidence reveals Green started treating with Christopher W. Kostman, M.D., in January 2012, due to complaints of bilateral hand weakness and bilateral shoulder pain. (Tr. 18, 278.) At that time, she reported that she was working as a caterer and that her symptoms started in October of 2011. (Tr. 278.) She had seen an orthopedic surgeon for her shoulder symptoms and underwent a subacromial injection, which did not improve her right shoulder symptoms. *Id.* Dr. Kostman diagnosed Green with carpal tunnel syndrome and AC joint degenerative changes, and recommended nerve conduction testing, splinting at night, and the use of nonsteroidal anti-inflammatory medication. (Tr. 279.) On February 1, 2012, Dr. Kostman indicated that the nerve conduction study was negative for carpal tunnel syndrome. (Tr. 280.) Green complained of persistent shoulder pain. *Id.* Dr. Kostman administered an AC joint injection, and recommended physical therapy. *Id.* Physical therapy notes dated February 13, 2012, indicate Green continued to complain of bilateral shoulder pain secondary to her job demands of reaching and lifting overhead, and that Green's "whole work station requires overhead reaching." (Tr. 295.) Green underwent multiple cortisone injections in February and March of 2012, and reported that they helped her symptoms but only lasted a few days. (Tr. 283-85.) On March 28, 2012, Dr. Kostman indicated that Green wished to proceed with right and left shoulder arthroscopy, with her left shoulder surgery to be scheduled first. (Tr. 285.)

Green underwent left shoulder arthroscopy, with subacromial decompression and distal

claviculectomy, and debridement of partial-thickness rotator cuff tear on April 9, 2012. (Tr. 317, 323-24.) On April 25, 2012, a physician assistant at Dr. Kostman's office indicated that Green was doing well, was progressing her motion, and was having less pain. (Tr. 286.) It was recommended that Green attend physical therapy at least once a week. *Id.* On April 23, 2012, physical therapy notes indicate Green reported her left shoulder was approximately 75 percent better after five therapy visits. (Tr. 300.) Green reported that she was able to use her left arm to perform activities such as washing her hair, but still had difficulty with overhead reaching. *Id.*

On May 21, 2012, Green underwent the same surgical procedure on her right shoulder. (Tr. 307.) On June 4, 2012, Green's therapist indicated that Green had attended three out of five treatment sessions and reported her right shoulder had improved 65 to 70 percent. (Tr. 350.) Green indicated that she was able to use her dominant arm for all self-care without difficulty. *Id.* It was noted that, despite improvements, bilateral weakness continued to be an issue affecting Green's "functional arm use." *Id.*

On June 6, 2012, Green saw Dr. Kostman's physician assistant for a two-week follow-up after her right shoulder surgery. (Tr. 409.) Green reported that she was doing very well, and had no pain. *Id.* She was advised to continue with therapy. *Id.*

On June 18, 2012, it was noted that Green had called and canceled her remaining therapy appointments, stating that she had seen her doctor and he indicated that her motion looked good and she did not need more therapy. (Tr. 351.)

On June 20, 2012, Green saw Dr. Kostman for follow-up regarding her right shoulder surgery, at which time Dr. Kostman indicated she was doing very well in physical therapy. (Tr. 410.) Upon examination, she had no tenderness to palpation and minimal tenderness to palpation involving her AC joint; full right shoulder range of motion in forward flexion, abduction, internal

and external rotation; full rotator cuff strength; no instability; and negative cross-arm adduction test. *Id.* Green reported that she was interested in returning to work around the first of July. *Id.* Dr. Kostman indicated that Green should continue with exercises on her own, follow-up with him on an as-needed basis, and could return to work on July 1st as planned. *Id.*

On January 2, 2013, Green presented to Grace Hill Health Centers, Inc. ("Grace Hill") with complaints of bilateral shoulder pain that was aggravated by pushing, range of motion of the shoulders, and lying in bed. (Tr. 434.) Green indicated that she had lost her insurance in July of 2012 because she was not able to continue her job due to pain, and that she was no longer able to see a specialist. *Id.* Upon examination, bilateral shoulder tenderness was noted. (Tr. 435.) Green had full range of motion above her head and in front of herself, with pain on the range of motion, and slightly decreased range of motion to posterior movements. *Id.*

On April 17, 2013, Green returned to Grace Hill with complaints of shoulder pain. (Tr. 441.) Green reported that the pain was aggravated by movement and by placing her arms at her side, and was relieved by elevating her arms to shoulder level. *Id.* She reported mild pain relief with Celebrex[1] and Tramadol,[2] and indicated that she was performing the exercises learned in physical therapy daily. *Id.* Upon examination, the nurse practitioner noted bilateral shoulder tenderness and bilateral moderately reduced range of motion. (Tr. 442.) Green had decreased range of motion above her head, behind her back, and mildly limited range of motion in front of her body. *Id.* Green was prescribed Celebrex and Tramadol and was referred to an orthopedist. (Tr. 439.)

On June 19, 2013, Green saw Joseph Williams, M.D., for an orthopedic examination. (Tr.

---

[1]Celebrex is a nonsteroidal anti-inflammatory drug indicated for the relief of pain and swelling. *See* WebMD, http://www.webmd.com/drugs (last visited August 18, 2016).
[2]Tramadol is indicated for the relief of moderate to moderately severe pain. *See* WebMD, http://www.webmd.com/drugs (last visited August 18, 2016).

414-15.) Green complained of bilateral shoulder pain. (Tr. 414.) Upon examination, Green had full range of motion of both shoulders, negative impingement tests, and negative supraspinatus test. (Tr. 416.) X-rays revealed postoperative changes. *Id.* Dr. Williams stated that Green has "persistent bursitis" in both shoulders. *Id.* He continued Green's medications, and administered injections in both shoulders. *Id.*

In a letter to Green dated July 16, 2013, Grace Hill nurse practitioner Brook Strickland stated that Green's x-ray results revealed a bone spur at the end of the right clavicle interfering with her right shoulder; a widening of the joint space of the right shoulder; and also arthritis in the right shoulder. (Tr. 445.) Ms. Strickland stated that the left shoulder x-ray revealed arthritis and widening of the joint space. *Id.* Ms. Strickland indicated that she had referred Green to an orthopedist. *Id.*

Green presented to Ms. Strickland on August 27, 2013, at which time she complained of aching and dull bilateral shoulder pain, which was aggravated by repetitive motion of the shoulders. (Tr. 446.) Green reported that she worked ten to twelve hours a week, and her pain was worsened with work. *Id.* Upon examination, Ms. Strickland noted decreased shoulder range of motion above the head 160 degrees bilaterally, and behind the back range of motion was moderately limited. (Tr. 448.) She also noted "significant tenderness" to the bilateral clavicles and superior shoulders. *Id.* Ms. Strickland increased Green's dosage of Tramadol. *Id.*

Green saw Dr. Williams for follow-up on September 11, 2013. (Tr. 452.) Green complained of persistent bilateral shoulder pain despite receiving previous cortisone injections. *Id.* Green had normal range of motion of the shoulders. *Id.* Dr. Williams diagnosed her with osteoarthritis of the shoulders, and administered a cortisone injection into the right shoulder. *Id.* He recommended an MRI of the right shoulder, but Green indicated that she did not have

insurance so she did not wish to undergo the MRI. *Id.*

Green saw Ms. Strickland on October 14, 2013, with complaints of bilateral shoulder pain that was aggravated by any movements of the arms and by turning her head. (Tr. 449.) Green reported that she has to leave work early at times because the pain worsens with activity. *Id.* She reported that the cortisone injection did not help. *Id.* Upon examination, Ms. Strickland noted bilateral shoulder tenderness and moderately reduced range of motion. (Tr. 450.) Ms. Strickland stopped Green's medications and started her on Naproxen[3] and Flexeril.[4] (Tr. 451.) She indicated she would refer Green to another orthopedist when Green had insurance, as Dr. Williams' office had closed. *Id.*

The ALJ concluded that the record reveals that Green's surgery was generally successful in relieving her symptoms. (Tr. 22.) The ALJ stated that the records indicate Green typically had full range of motion in both arms and she reported significant improvement in her condition to her physical therapist. *Id.* The ALJ noted that there are no opinions from Green's treating or examining physicians indicating that she is disabled or that she has greater limitations than those found by the ALJ. (Tr. 23.)

The ALJ next found that Green's subjective allegations were not entirely credible. (Tr. 21.) Green contends that the ALJ made several errors in assessing her credibility. "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence

---

[3]Naproxen is a nonsteroidal anti-inflammatory drug indicated for the relief of pain and swelling. *See* WebMD, http://www.webmd.com/drugs (last visited August 18, 2016).
[4]Flexeril is indicated for the treatment of muscle spasms. *See* WebMD, http://www.webmd.com/drugs (last visited August 18, 2016).

of pain, the ALJ must consider:

    (1) the claimant's daily activities;

    (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

    (3) any precipitating or aggravating factors;

    (4) the dosage, effectiveness, and side effects of any medication; and

    (5) the claimant's functional restrictions.

*Baker v. Sec'y of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992); *Polaski,* 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. *See id.* The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. *See Polaski,* 739 F.2d at 1322; *Cruse,* 867 F.2d at 1186. The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. *See Guilliams,* 393 F.3d at 801; *Masterson,* 363 F.3d at 738; *Lewis v. Barnhart,* 353 F.3d 642, 647 (8th Cir. 2003); *Hall v. Chater,* 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. *Robinson v. Sullivan,* 956 F.2d 836, 841 (8th Cir. 1992); *Butler v. Sec'y of Health & Human Servs.,* 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004). *See also Steed,* 524 F.3d at 876 (citing *Lowe v. Apfel,* 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. *See id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *See*

*Rautio v. Bowen,* 862 F.2d 176, 179 (8th Cir. 1988); *Millbrook v. Heckler,* 780 F.2d 1371, 1374 (8th Cir. 1985).

The ALJ first stated that Green "reported not working since the alleged onset date, but subsequent information revealed that this is not true." (Tr. 21.) The ALJ noted that Green returned to work in July 2012 and worked until December 2013, when she alleged her condition caused her to stop working. *Id.* The ALJ found "the fact that the claimant provided inaccurate information as to her working, on a matter so integral to determining disability, suggests that much of what the claimant has alleged may be similarly unreliable." (Tr. 21-22.)

Green notes that the ALJ did not provide a citation as to where in the record she stated anything untrue, and denies ever making such a statement. The record reveals that Green testified that she worked until December of 2013. (Tr. 35.) Green further testified that she worked part-time after her shoulder surgeries, decreasing from forty hours a week to only ten hours a week; she was only able to lift five pounds, and other employees helped her lift items weighing over five pounds; and she was ultimately unable to work even ten hours a week due to her shoulder pain. (Tr. 38-40.)

Defendant states that she "concedes that Plaintiff was forthright about her part-time work activity subsequent to her alleged onset date." (Doc. 13 at 8.) Defendant argues that the ALJ's misstatement was harmless error given that the ALJ cited other factors supporting her credibility analysis. The ALJ characterized Green's reported work history as an issue "so integral to determining disability." (Tr. 22.) She indicated that Green's alleged misstatement about her work history was a factor that weighed heavily against her in assessing her credibility. Given the emphasis placed on this factor by the ALJ, the Court would be reluctant to find the ALJ's erroneous finding on this issue harmless. As will be discussed below, the ALJ made additional

errors in this case. The Court finds that the ALJ's errors, in combination, were not harmless.

Green next argues that the ALJ erred in failing to consider the third party statements of Green's co-worker and supervisor. Jessica Nave, Kitchen Manager at The Daily Bread, stated that she had worked with Green for three years, during which she witnessed a decline from Green working at a "very efficient pace," to Green depending on Ms. Nave for help in getting items off the shelves and cutting vegetables. (Tr. 229.) Ms. Nave stated that it was obvious to her that Green was in pain, and that she is now "unable to perform her job duties." *Id.* Ms. Nave stated that, after four hours of working, Green "walks around the work place with her shoulders hunched and is unable to work." *Id.*

Mary Rudy also completed a statement, in which she indicated that she had worked with Green for two-and-a-half years, and that Green "has not been able to do her job without showing a lot of pain since before her surgery." (Tr. 230.) Ms. Rudy stated that Green cannot "lift her arms to reach things over her head," and that "[e]veryone at work helps her reach objects and carries heavy things for her so she can complete her work." *Id.*

The ALJ did not discuss the statements of Ms. Nave or Ms. Rudy. Defendant acknowledges that the ALJ did not address these statements, but argues that this error was harmless in light of the fact that Green's surgeon released her to work, and Dr. Williams found she had full range of motion of her shoulders.

The Social Security regulations, which are binding on the ALJ, require the ALJ to identify pertinent information from medical and non-medical reports and to "carefully consider any other information you may submit about your symptoms," including statements "other persons provide about your pain or other symptoms." 20 C.F.R. § 404.1529(c)(3); *Buckner,* 646 F.3d at 559. The regulations do not define "carefully consider." *Id.* However, the ALJ must provide some

evidence that she was at least aware of the testimony or opinion at issue. Although remand is not always required where an ALJ fails to explain or discuss why evidence from a lay person was rejected, in cases where remand was not ordered, the court found at the very least that the ALJ addressed or mentioned the third-party testimony. *Robinson v. Sullivan,* 956 F.2d 836, 841 (8th Cir. 1992) (noting that "it is clear that the ALJ specifically addressed [the wife's] testimony and found it not credible"); *Smith v. Heckler,* 735 F.2d 312, 317 (8th Cir. 1984) ("If the ALJ is to reject such [third-party] testimony, it must be specifically discussed and credibility determinations expressed.").

Here, the decision does not specify whether the ALJ considered the third party statements from Green's co-workers. This evidence was relevant in that it corroborated Green's allegations that she was unable to perform her past work, and it contradicted the ALJ's conclusion that Green was capable of frequently reaching overhead. The ALJ, therefore, erred in failing to address these statements.

The other factors that the ALJ found detracted from Green's credibility were: (1) Green's demeanor at the hearing; and (2) the fact that Green filed a workers' compensation claim in October 2011 and received a settlement in November 2013. (Tr. 22.) These are appropriate factors for the ALJ to consider in evaluating Green's credibility. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) ("an ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations"); *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) (ALJ may consider that claimant had a disincentive to work due to workers' compensation litigation).

Although the ALJ considered some proper factors in assessing Green's credibility, the ALJ's erroneous finding that Green made inconsistent statements regarding work activity

combined with her failure to discuss the third party statements from Green's co-workers undermines the ALJ's ultimate conclusion that Green's subjective allegations are not credible. *See generally Baumgarten v. Chater*, 75 F.3d 366 (8th Cir. 1996) (several alleged inconsistencies relied upon by ALJ not supported by the record, which undermines the ALJ's "ultimate conclusion that Baumgarten's pain is less severe than she claims").

Green's complaints of shoulder pain are well documented in the medical records, as she complained of pain at every visit with medical professionals. Green's examining medical professionals also noted limitation of overhead motion on some visits, prescribed pain medication, and administered cortisone injections. Abnormalities were noted on x-rays of the shoulders, including a bone spur interfering with her right shoulder, and widening of the joint space and arthritis in both shoulders. (Tr. 445.) The ALJ emphasized the fact that Dr. Williams found Green had full range of motion of the shoulders. Dr. Williams did not, however, indicate that he doubted Green's complaints of shoulder pain. Rather, he diagnosed Green with bursitis and osteoarthritis of the shoulders, administered cortisone injections, and ordered an MRI. Based on this evidence, it is doubtful that Green is capable of frequent overhead reaching. The ALJ then performed a faulty credibility analysis to find that Green's subjective complaints of pain were not credible. The ALJ's RFC determination is not, therefore, supported by substantial evidence.

Green also argues that the ALJ erred at steps four and five of the sequential evaluation. Defendant concedes that the ALJ erred in finding that Green could perform her past work as a retail sales clerk at step four because Green did not perform this work at the substantial gainful activity level. (Doc. 13 at 10.) Green contends that the ALJ also erred at step five in failing to identify or resolve the overhead reaching conflicts between the vocational expert testimony and the Dictionary of Occupational Titles. Because the Court has found that the ALJ's RFC

determination is not supported by substantial evidence, the ALJ's step five determination, based on this erroneous RFC, is similarly not supported by substantial evidence.

## V. Conclusion

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. Upon remand, the ALJ shall properly assess Green's credibility, consider the third party statements, and formulate a new RFC based on the record as a whole, obtaining additional medical evidence addressing Green's ability to reach overhead, if necessary.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of September, 2016.